UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHARLES DIPASQUALE,

    Plaintiff,

vs.

JAMES HAWKINS, *et al.*,

    Defendants.

Case No. 3:16-cv-219

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANT HERRES'S PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 18) BE GRANTED; (2) DEFENDANT PROCTER'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 25) BE GRANTED, AND HE BE TERMINATED AS A PARTY TO THIS CASE; AND (3) DEFENDANT HAWKINS'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 22) BE GRANTED WITH REGARD TO THE CLAIM OF CIVIL CONSPIRACY, BUT DENIED WITH REGARD TO THE CLAIM OF MALICIOUS PROSECUTION;**

---

This 42 U.S.C. § 1983 civil rights case is before the Court on the Rule 12(c) motions for judgment on the pleadings filed by Defendants Mark Herres (doc. 18), James Hawkins (doc. 22), and Bradley Proctor (doc. 25). Plaintiff filed memoranda in opposition to Defendants' motions (docs. 24, 31). Thereafter, Defendants filed reply memoranda (docs. 26, 28, 32). The Court has carefully reviewed each of the foregoing, and Defendants' motions are ripe for decision.

**I.**

This case involves a business dispute that ultimately ended in a felony criminal prosecution in the Montgomery County, Ohio Court of Common Pleas -- felony charges upon which Plaintiff Charles Dipasquale was acquitted after a trial. *See* doc. 1 at PageID 6, 17. The

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

facts set forth herein are Dipasquale's allegations in this civil rights case viewed in a light most favorable to him. *See infra*.

The business relationship between Dipasquale and Defendants Herres and Proctor began when the three men agreed in April 2014 to explore the possibility of selling used cars. *Id*. at PageID 2, 12. The terms of the parties' agreement are purportedly set forth in an unsigned written document that Dipasquale attaches as an exhibit to the complaint. *See* doc. 1 at PageID 12. For purposes of deciding the Rule 12(c) motions, the undersigned assumes the truth of Plaintiff's allegation that the attached document is the parties' agreement and considers it when deciding Defendants' Rule 12(c) motions. *See* Fed. R. Civ. P. 10 (stating that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009) (stating that, in deciding a Rule 12(c) motion, courts may "consider documents attached to, incorporated by, or referred to in the pleadings").

Pursuant to the parties' agreement, Dipasquale and Proctor agreed to fund the business venture, whereas Herres agreed to be responsible for finding used cars to purchase on behalf of Dipasquale's separate limited liability company, Marco Motor Cars LLC.[2] *Id*. at PageID 2. Herres was to purchase cars for "Marco Motor Cars LLC *and only* Marco Motor Cars LLC." *Id*. (emphasis added). To that end, Dipasquale transferred $10,000 to the Marco Motor Car's bank account, Proctor transferred $8,000 to the account, and a total of $8,000 was subsequently withdrawn from the account so that Herres could purchase a 1968 Ford Torino for $7,000. *Id*. at PageID 3.

---

[2] From the allegations and documents attached to the complaint, it appears that, prior to his business relationship with Proctor and Herres, Dipasquale had previously formed Marco Motor Cars LLC, and he was the sole owner. *See* doc. 1 at PageID 12, 16. Pursuant to the terms of the parties' business agreement, Dipasquale would add Proctor and Herres as partners in Marco Motor Cars LLC after six months if their business venture proved successful. *See id*. at PageID 12. Dipasquale alleges that the venture was not successful. *Id*.

2

After purchasing the Torino, the seller properly endorsed the back of the title certificate, but listed no new owner. *Id*. at PageID 3, 13. Proctor and Herres held onto the endorsed title certificate and failed to seek and obtain a new title in the name of Marco Motor Cars LLC -- an issue that angered Dipasquale. *Id*. According to a letter prepared by Proctor, he and Herres "held the title as collateral until [Dipasquale] created the promised formal partnership agreement and added [them] to the bank account as promised." *Id*. at PageID 16. The parties' written agreement attached to the complaint, however, does not contemplate Proctor and Herres holding title to the Torino as collateral and, instead, contemplates that all vehicles would be purchased, as noted, "on behalf of Marco Motor Cars LLC and only Marco Motor Cars LLC." *Id*. at PageID 12. In addition, the parties' written agreement also specifically states that Dipasquale would "be the sole signatory on the bank account" and makes no mention of either Herres or Proctor being added to the account. *Id*. at PageID 12.

Soon after the purchase, the parties stored the Tornio in a facility in Clayton, Ohio paid for by Dipasquale and Herres. *Id*. at PageID 3. The parties to the business venture intended to restore the Tornio in the storage facility so that it could later be sold. *Id*. at PageID 3. Five months after commencement of the business venture, however, no progress had been made on restoration of the Torino and the business venture had generated no income. *Id*. As a result, a dispute among Dipasquale, Herres and Proctor arose, and Dipasquale obtained possession of the Torino from the storage facility. *Id*. Dipasquale then moved the vehicle to another storage facility and terminated the business venture. *Id*.

Thereafter, Herres sought the assistance of the Clay Township, Ohio Police Department in obtaining possession of the Torino for himself by reporting the Torino as stolen by Dipasquale. *Id*. Initially, the Clay Township Police refused to act on Herres's theft allegation because the title -- as noted above -- had not been assigned to a new owner. *Id*. at PageID 3-4.

Subsequently, on September 14, 2014, Herres caused the then-unassigned title to be transferred to him under his name alone and again approached the Clay Township Police to assist in resolving the dispute regarding the rightful owner of the vehicle. *Id*. at PageID 4. At that time, Clay Township Police Officer Douglas DeVore concluded that Herres's story "was convoluted"; the dispute was civil rather than criminal in nature; and criminal charges were unwarranted. *Id*. at PageID 4. Subsequently, Officer DeVore left his position as an investigator, returned to road patrol, and the subject dispute was transferred to Clay Township Detective James Hawkins for handling. *Id*.

On October 23, 2014, Defendant Proctor gave Hawkins a written statement regarding Dipasquale's purported theft of the Tornio and, thereafter, in April 2015 -- despite being in possession of the agreement between Proctor, Herres and Dipasquale, as well as other documents -- Hawkins presented the case to a grand jury in Montgomery County, Ohio. *Id*. at PageID 5. Both Hawkins and Herres testified before the grand jury. *Id*. at PageID 5, 16. The grand jury ultimately issued a two count indictment against Dipasquale -- one count alleging theft of a motor vehicle, and a second count charging the receipt of stolen property. *Id*. at PageID 5. The case was tried to the bench before the Hon. Steven J. Dankof of the Montgomery County Court of Common Pleas; Judge Dankof found Dipasquale not guilty on both counts. *Id*. at PageID 6, 17. Judge Dankof expressly concluded as follows:

> The Court, while precluded as a matter of law from finding Defendant innocent, notes that the evidence adduced herein certainly proves, beyond a reasonable doubt, that Dr. Dipasquale is unquestionably ***innocent*** of all charges . . . and that the machinery of the criminal justice system was launched against him for the sordid purpose of gaining an advantage in what is entirely a civil matter, *i.e.*, a dispute among disaffected partners.

*Id*. at PageID 17 (emphasis in original).

Dipasquale filed this action in U.S. District Court on June 7, 2016 asserting claims under § 1983 for malicious prosecution in violation of his rights under the Fourth Amendment and civil

4

conspiracy between the Defendants. *Id*. at PageID 10. Dipasquale also seeks a finding against Herres only (not Proctor or Hawkins) under Ohio Rev. Code § 4505.02 that the certificate of title issued for the Torino was improperly issued. *Id*. at PageID 10. Dipasquale's Ohio Revised Code claim is not challenged in the Rule 12(c) motions.

In addition to Dipasquale's claims, Herres asserts counterclaims against Dipasquale under state law seeking replevin and alleging conversion and fraud (Hawkins and Proctor do not assert any counterclaims). Doc. 13 at PageID 61. None of Herres's counterclaims are at issue in the Rule 12(c) motions.

Hawkins, Proctor, and Herres each filed separate motions for judgment on the pleadings seeking to dismiss Dipasquale's claims. Docs. 18, 22, 25. In support of their motions, all three Defendants argue that Dipasquale has not properly pled § 1983 malicious prosecution or civil conspiracy claims against them. Proctor and Herres additionally contend they are not state actors for purposes of § 1983, and Hawkins contends he is qualifiedly immune from liability. These arguments are addressed in turn.

## II.

The standard for reviewing a Rule 12(c) motion for judgment on the pleadings is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."

To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (citing *Twombly*, 550 U.S. at 555).  In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

### A. Malicious Prosecution

The Court first addresses Defendants' arguments regarding Dipasquale's Fourth Amendment malicious prosecution claim.  A malicious prosecution claim asserted under § 1983

6

requires proof that: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). Defendants all argue that Dipasquale's allegations fails to state a malicious prosecution claim because he cannot establish the first three elements above. Contrary to Defendants' contentions, the undersigned concludes that the allegations in are sufficient to withstand a Rule 12(c) motion.

With regard to the first element, a reasonable juror could conclude, based solely the allegations viewed in a light most favorable to Dipasquale, that Hawkins influenced the decision to prosecute. In this regard, the undersigned notes that Officer DeVore found criminal charges against Dipasquale unwarranted based upon the evidence, but that decision quickly changed after Hawkins was assigned the case following DeVore's return to road patrol. Doc. 1 at PageID 4. Based upon this sudden change of course following reassignment of the case to Detective Hawkins, a reasonable jury -- viewing these allegations in a light most favorable to Dipasquale -- could conclude that Hawkins influenced the decision to prosecute.

With regard to the second element -- *i.e.*, the absence of probable cause -- Defendants point to the fact that Dipasquale was indicted by a grand jury in Montgomery County and, based upon such undisputed fact, assert that issuance of the indictment conclusively establishes the existence of probable cause. *See* doc. 18 at PageID 81l; doc. 22 at PageID 105-08; doc. 25 at PageID 155-57. As a general rule, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause" for a

prosecution. *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).

As recently held by the Sixth Circuit, however, an exception to this general rule exists where "a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence." *King v. Harwood*, 852 F.3d 568, 587 (6th Cir. 2017). More recently, the Sixth Circuit found this exception applicable where an officer "misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence." *Jones v. Clark Cnty., Ky.*, No. 16-6281, 2017 WL 2297487, at *2 (6th Cir. May 25, 2017).

Based upon the factual allegations viewed in a light most favorable to Dipasquale, a reasonable juror could conclude that Hawkins acted recklessly when setting the prosecution in motion based upon the allegedly false statements of Procter and Herres. The falsity of such statements are allegedly readily apparent from information provided by Dipasquale to the Clay Township Police, such as the parties' written agreement -- stating that cars would be purchased "on behalf of Marco Motor Cars LLC and only Marco Motor Cars LLC[,]" of which Dipasquale was the sole owner (and Herres and Proctor were not owners) -- as well as "the lease for the storage facility, checks, and other evidence demonstrating the civil nature of this matter." *Cf. Jones*, 2017 WL 2297487, at *2.[3]

With regard to the third element, Dipasquale's allegations -- that, after initially appearing on the felony charges, he was released on a bond that imposed travel restrictions, reporting requirements, and urine analysis -- are sufficient allegations of a liberty deprivation. *See Miller*

---

[3] Defendants are entitled to absolute immunity with regard to claims arising from their testimony to the grand jury. *King*, 852 F.3d at 584 (stating that "*all* grand-jury witnesses, even law-enforcement officers who have 'conspired to present false testimony'" are entitled to absolute immunity from suit for testimony given to a grand jury) (citing *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012)).

8

*v. Maddox*, No. 17-5021, 2017 3298570, at *5 (6th Cir. Aug. 3, 2017). Lastly, there is no dispute regarding the fourth and final element, *i.e.*, that the criminal proceeding resolved in Dipasquale's favor. Doc. 22; *see also* doc. 1 at PageID 17.

Accordingly, based on the foregoing, Dipasquale's malicious prosecution claim is adequately pled with specificity sufficient to withstand a Rule 12(c) motion.[4] The undersigned makes no conclusive finding with regard to the merits of this claim and simply finds that the allegations are sufficient at this early stage of the litigation.

### B. State Actors

Although Defendants Proctor and Herres are private citizens and not "state actors" for purposes of § 1983, Dipasquale seeks to hold them liable under § 1983 on the theory that they conspired with Hawkins (who is a state actor) to violate Dipasquale's Fourth Amendment right to be free from malicious prosecution. *See* doc. 1 at PageID 7-10. When "a private party has conspired with state officials to violate constitutional right, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 563 (6th Cir. 2010) (citing *Cooper v. Parish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000)). Thus, Dipasquale's constitutional claims against Proctor and Herres under § 1983 turn on the fining of a civil conspiracy with a state actor such as Hawkins.

As stated by the Sixth Circuit:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective,

---

[4] In his reply memorandum, Hawkins argues for the first time that Dipasquale fails to sufficiently allege claims against him in his official capacity. Because Hawkins asserted this argument for the first time in his reply, the undersigned does not address the argument herein. *See Solomon v. Med. Mut. of Oh.*, 411 F. App'x 788, 791 (6th Cir. 2011) (holding that arguments offered for the first time in a reply are forfeited).

> and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). "[P]leading requirements governing civil conspiracies are relatively strict" and, therefore, such "claims must be pled with some degree of specificity[.]" *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state . . . a [civil conspiracy] claim under § 1983." *Id*.

Here, the allegations are sufficiently specific to support a claim that Proctor and Herres were plausibly part of a civil conspiracy, but factual allegations regarding Hawkins's involvement as part of the scheme are insufficient. The facts alleged with regard to Hawkins's participation in Dipasquale's prosecution are limited to two paragraphs of the complaint -- alleging that Proctor gave Hawkins a typewritten statement and that Hawkins, six months later, presented the case to the grand jury. Doc. 1 at PageID 5. Although there are allegations from which one could infer that Hawkins acted recklessly when setting the prosecution in motion (based upon the allegedly false statements of Defendants Procter and Herres), those allegations are not sufficient to plausibly show that Hawkins's recklessness in that regard was part of a conspiratorial plot with Proctor and Herres.

There is, however, an allegation that prosecutors refused to dismiss the criminal charges against Dipasquale because "someone in [the prosecutor's office] had taken a 'personal interest' in the case." Doc. 1 at PageID 6. Such allegation does not appear to reference Detective Hawkins (who, according to the allegations, is not a prosecutor and not part of the Prosecutor's Office) and, nevertheless, is too vague an allegation to meet the "relatively strict" pleading requirements for civil conspiracy claims. *See Fieger*, 524 F.3d at 776. While Dipasquale could potentially state a civil conspiracy claim between Proctor, Herres and the now unidentified

individual within the Montgomery County Prosecutor's Office, he has not done so in his initial complaint.

Based on the foregoing, the undersigned concludes that Dipasquale's § 1983 claims against Proctor and Herres are subject to dismissal in the absence of sufficiently specific factual allegations plausibly demonstrating that they conspired with Detective Hawkins. Accordingly, Dipasquale's civil conspiracy claim under § 1983 should be dismissed for failure to state a claim.

C. **Qualified Immunity**

Hawkins further argues that he is entitled to qualified immunity with regard to the malicious prosecution claim. Doc. 22 at PageID 114-16. "Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Simply put, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As a state actor, Hawkins is entitled to qualified immunity unless the allegations, "when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini*, 609 F.3d at 863; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Having determined, *supra*, that the allegations sufficiently allege a violation of a constitutional right, the remaining inquiry is whether the right allegedly violated was clearly established. A right is "clearly established" when "existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (citing *al-Kidd*, 563 U.S. at 741).

The Supreme Court has instructed courts to "not define clearly established law at a high level of generality[,]" such as "that an unreasonable search or seizure violates the Fourth Amendment[.]" *al-Kidd*, 563 U.S. at 742. Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established'"; an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and internal quotations omitted). In finding a right "clearly established," the Court need not rely upon "a case on point," *id.*, or even "a prior case [that is] 'fundamentally' or 'materially' similar to the present case[.]" *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015). Instead, such a right need only be defined "in a particularized context," such as finding a Fourth Amendment violation when state actors use "excessively forceful or unduly tight handcuffing." *Baynes*, 799 F.3d at 614. Such a "level of particularity in defining the constitutional right easily meets the standards set out by the Supreme Court[.]" *Id*.

As held by the Sixth Circuit, "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *King*, 852 F.3d at 582–83. Because the constitutional right allegedly violated was clearly established, Hawkins's assertion of qualified immunity is, at this stage of the case, without merit.

### III.

Based upon the foregoing, **IT IS THEREFORE RECOMMENDED** that: (1) Defendant Herres's motion for partial judgment on the pleadings (doc. 18) be **GRANTED**; (2) Defendant Proctor's motion for judgment on the pleadings (doc. 25) be **GRANTED**; (3) Hawkins's motion

for judgment on the pleadings (doc. 22) be **GRANTED** as it relates to the claim of civil conspiracy and **DENIED** as it relates to the claim of malicious prosecution.

Adoption of this Report and Recommendation would not result in the termination of this case on the Court's docket and would result only in the termination of Defendant Protor as a party to this litigation.[5]

Date:  August 10, 2017             s/ Michael J. Newman
                                   Michael J. Newman
                                   United States Magistrate Judge

---

[5] As noted previously, Herres, in his Rule 12(c) motion, does not challenge Dipasquale's fifth cause of action asserted under Ohio Rev. Code § 4505.02 and, therefore, he will remain a party to this case with regard to that claim. *See* doc. 1 at PageID 10.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).