UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHARLES DIPASQUALE,

    Plaintiff,

vs.

JAMES HAWKINS, *et al.*,

    Defendants.

Case No. 3:16-cv-219

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (DOC. 99) BE DENIED; AND (2) DEFENDANT HERRES'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 103) ALSO BE DENIED**

---

This civil case is before the Court on two separate motions and respective briefing: (1) Plaintiff's motion for judgment on the pleadings with regard to Defendant Mark Herres's counterclaim (docs. 99, 108, 110); and (2) Herres's motion for judgment on the pleadings (docs. 103, 109). The undersigned has carefully reviewed all of the foregoing, and the aforementioned motions are ripe for decision.

I.

This case involves a business dispute that ultimately ended in a felony criminal prosecution in the Montgomery County, Ohio Court of Common Pleas -- felony charges upon which Plaintiff Charles DiPasquale was acquitted after a trial. *See* doc. 1 at PageID 6, 17. After his acquittal in that state criminal case, Plaintiff filed this federal action asserting, *inter alia*, claims under § 1983 for malicious prosecution in violation of his rights under the Fourth Amendment and civil

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

conspiracy between his former business partners, Defendants Herres and Bradley Proctor, and Clay Township, Ohio police detective James Hawkins. *Id*. at PageID 10. The facts alleged by Plaintiff in his original complaint, and which underlie the dispute, were previously set forth by the undersigned in a Report and Recommendation issued on August 10, 2017. *See DiPasquale v. Hawkins*, No. 3:16-CV-219, 2017 WL 3431442, at *1 (S.D. Ohio Aug. 10, 2017), *report and recommendation adopted*, No. 3:16-CV-219, 2017 WL 4283950 (S.D. Ohio Sept. 27, 2017), *aff'd in part, rev'd in part and remanded*, 748 F. App'x 688 (6th Cir. 2018).

The undersigned, in a previous Report and Recommendation addressing Rule 12 motions directed to Plaintiff's original complaint, *see* doc. 1, concluded that Plaintiff sufficiently plead a malicious prosecution claim, but that Plaintiff failed to set forth specific allegations of fact plausibly demonstrating that Proctor and Herres engaged in a conspiracy with a state actor and, therefore, recommended dismissal of the § 1983 claims against them. *Id*. at *6. The Report and Recommendation was subsequently adopted by Judge Rose over objections. *DiPasquale*, 2017 WL 4283950, at *1. Thereafter, Defendant Hawkins appealed the denial of qualified immunity on the malicious prosecution claim to the United States Court of Appeals for the Sixth Circuit. *DiPasquale*, 748 F. App'x at 691.

On appeal, the Sixth Circuit disagreed with this Court's denial of Hawkins's motion to dismiss the malicious prosecution claim and permitted such claim to proceed, finding "deficiencies in the allegations regarding the first and second elements" of such cause of action. *Id*. at 695. In so concluding, however, the Sixth Circuit found -- as this Court did -- that there were facts alleged in the complaint that could support the malicious prosecution claim against Hawkins. *Id*. However, because such allegations were asserted "under the civil conspiracy cause of action," and not incorporated in "the malicious prosecution cause of action[,]" DiPasquale's pleading of his

2

malicious prosecution claim was "technically deficient" and subject to dismissal under Rule 12(b)(6). *Id.* at 694-95. The Sixth Circuit then remanded the case so that this Court, in its discretion, could consider whether to grant leave to amend. *Id.*

On remand, the Court granted Plaintiff leave to file an amended complaint (docs. 84, 93), which Plaintiff filed on January 7, 2019. Doc. 85. Plaintiff continues to allege, *inter alia*, § 1983 claims asserting a joint action and/or conspiracy between Defendants to maliciously prosecute him in violation of the Fourth Amendment. *Id.* Defendant Herres asserts a counterclaim against Plaintiff seeking replevin and asserting claims for conversion and fraud. Doc. 92. As noted, *supra*, Herres moves for judgment on the pleadings with respect to the claims asserted against him in Plaintiff's amended complaint and Plaintiff moves for judgment on the pleadings with respect to the counterclaim of fraud alleged against him. Docs. 99, 109. For purposes of deciding these pending motions, the Court accepts as true the facts alleged in the respective pleadings.

### A. Plaintiff's Allegations in the Amended Complaint

In his amended complaint, Plaintiff alleges that, on April 11, 2014, he, Herres, and Proctor agreed to form a partnership for the purpose of buying and reselling used cars for profit, and further agreed that the sales would be accomplished by using Plaintiff's motor vehicle dealer's license, which was registered as/under the name of "Marco Motor Cars LLC." Doc. 85 at PageID 646. The parties also agreed that their partnership would do business as, and operate under, various trade names, namely, *inter alia*, Marco Motor Cars; Marco Motor Cars, LLC; Marco Motor Cars LLC; Marco Motorcars, Ltd.; and/or Marco Motors. *Id.*

As part of the agreement between the parties, Herres agreed to locate, retrieve, repair and restore the cars for the partnership, while DiPasquale and Proctor agreed to provide the capital needed to purchase the vehicles and complete their restoration. Doc. 85 at PageID 646. The parties

further agreed that Plaintiff and Proctor would deposit funds to be used for the partnership's business in a Marco Motorcars, Ltd. bank account, and that every vehicle Herres purchased with money withdrawn from the account would be purchased exclusively for Marco Motor Cars, LLC. Doc. 85 at PageID 646. Plaintiff promised to add Proctor and Herres as signors to the Marco Motorcars, Ltd. checking account if the partnership lasted six months. Doc. 85 at PageID 647.

To memorialize these and other agreed-upon terms governing their partnership, Proctor drafted a partnership agreement. Doc. 85 at PageID 647. The agreement was never signed. *Id*. Consistent with the written partnership agreement, however, Plaintiff transferred $10,000 to the Marco Motorcars, Ltd. checking account on April 12, 2014, withdrew $8,000.00 from that account the same day, and delivered it to Proctor and Herres for the purchase of a 1968 Ford Torino on behalf of the partnership. Doc. 85 at PageID 647. On April 13, 2014, Proctor and Herres purchased the Torino for $7,000.00. *Id*. As contemplated by the terms of the written partnership agreement, Herres did not contribute any money toward the purchase of the Torino. *Id*. After purchasing the car, Proctor and Herres transported it to a storage facility in Clayton, Ohio leased by Plaintiff and Herres on behalf of Marco Motor Cars, LLC. *Id*.

As of August 8, 2014, Herres had not performed any repairs on the Torino and Plaintiff continued to incur fees for storage. Doc. 85 at PageID 647. Despite having paid no money toward the purchase of the car and despite having performed no restoration work on the car, Herres refused to turn over the certificate of title for the Torino to Plaintiff when requested by Plaintiff to do so. Doc. 85 at PageID 647-48. For these and other reasons disclosed to Proctor by email on August 17, 2014, Plaintiff dissociated from the partnership and informed Proctor that the partnership's only asset, the Torino, would have to be sold at a steep loss unless Herres could reimburse Plaintiff for the costs and expenses incurred to purchase and store the car. *Id*.

Plaintiff alleges that, thereafter, Herres and Proctor demanded that he give them possession of the car and, when he refused, Herres and Proctor attempted to coerce him to do so by continuing to withhold the certificate of title to prevent the sale of the Torino, and by filing false police reports to launch a felony theft prosecution against him. *Id*. at PageID 648. To accomplish their agreed-upon objective to have Plaintiff prosecuted for theft, Plaintiff alleges that Proctor and Herres concealed the following when speaking with law enforcement and prosecutors: the existence of the partnership; that the Torino was purchased on behalf of Marco Motor Cars, LLC with $8,000.00 Plaintiff contributed; that the car storage building at Kimmel Road was leased by Herres and Plaintiff on behalf of Marco Motors Cars; and Plaintiff's August 17, 2014 email in which he dissociated from the partnership. *Id*. at 649.

In addition to concealing these facts from police and prosecutors, Proctor and Herres also allegedly falsely informed police and prosecutors that the Torino was Herres's personal property purchased with a loan from Proctor; that Plaintiff removed the car from storage without permission; and that the car was titled in Herres's name. *Id*. Proctor and Herres also allegedly concealed facts and made false statement to a grand jury. *Id*.

In furtherance of their purported conspiracy, Plaintiff alleges that Herres went to the Clay Township, Ohio Police Department on September 19, 2014 and met with Officer DeVore. *Id*. In a typewritten statement, Herres claimed to be the titled owner of the Torino; advised the officer that he leased the storage facility at issue; and further stated that Plaintiff removed the Torino from the facility. *Id*. Officer DeVore purportedly did not believe Herres's statements and continued to find his allegations "convoluted" after a short investigation, which included the review of documents given to him by Plaintiff's attorney. *Id*. at 649-50. Officer DeVore soon thereafter was

transferred to road patrol and provided a copy of his file on the matter to Defendant Hawkins, also a Clay Township police detective. *Id*. at PageID 650.

Plaintiff alleges that, despite all the documentary evidence contradicting the theft claims advanced by Herres and Proctor, Hawkins "agreed to help Herres and Proctor gain an advantage in their business dispute." *Id*. at PageID 651. After taking over the case from Devore, Hawkins contacted Proctor and asked him to provide a statement. *Id*. After receiving Proctor's statement, Hawkins drafted a report containing information he knew or should have known was false, gave such document to the Montgomery County, Ohio Prosecutor's Office "at the request of Herres and Proctor," and "requested that felony theft charges be brought against" Plaintiff. *Id*. at PageID 651-53.

Plaintiff alleges that, "[b]ased on the knowingly false and deliberately incomplete information supplied by Hawkins, Proctor and Herres, prosecutors convened a grand jury" and Plaintiff was, thereafter, indicted "for theft of a motor vehicle . . . and receiving stolen property[.]" *Id*. at PageID 653-54. Plaintiff was ultimately acquitted of the charges after a bench trial, with the trial judge noting that, not only did the state fail to prove guilt beyond a reasonable doubt, Plaintiff was "unquestionably *innocent* of all charges and that the machinery of the criminal justice system was launched against him for the sordid purpose of gaining an advantage in what is an entirely civil matter, *i.e.*, a business dispute among disaffected partners." *Id*. at PageID 654 (emphasis in original).

### B. Herres's Allegations in the Counterclaim

Herres alleges that, in the spring of 2014, Plaintiff began to court him and Proctor into entering into a partnership with him for various purposes including purchasing and selling late model cars. Doc. 92 at PageID 815. Although Plaintiff made several overtures about how he

wanted to enter into such partnership, Herres was always very clear that he would not discuss it further or enter into any sort of arrangement without having legal documents prepared to be reviewed by his counsel. *Id*.

Despite Herres's continuing statements that he would not consider entering into a partnership or business arrangement until he was provided with legal documents to review, and that they needed to be approved by his counsel, Plaintiff continued to harass Herres and Proctor and make overtures to entice them to enter into an business arrangement without any such documents. *Id*. Additionally, when Plaintiff learned that Herres was going to have a wedding at his (Herres's) home, Plaintiff offered to store various items of Herres's personal property at the car storage facility. *Id*. at PageID 815-16. Herres believed that Plaintiff was offering to store such items as a friendly gesture. *Id*. at 816.

At Plaintiff's suggestion, Herres relocated to the storage building the Torino, a 1979 Trans Am, a 1973 Mustang Mach I, a 1983 Porsche 944, a 1966 Chevelle, a mini Nascar racer, a Martin guitar (cowboy edition), a 2002 Yamaha LX boat, a 2002 Shoreline trailer, a 1958 Mercedes, two wave runners, and skids of vehicle parts. *Id*. Plaintiff provided Herres with a key to the storage facility so that Herres would have access to retrieve his personal property and in anticipation of Herres working on late model cars to sell. *Id*.

Without notice to Herres or the landlord, Plaintiff allegedly changed locks on the storage facility where Herres's property was being stored, thereby depriving Herres of access to his personal property. *Id*. In addition, Plaintiff removed from the storage facility the Torino that was titled in Herres' name. *Id*.

**II.**

The standard for reviewing a Rule 12(c) motion for judgment on the pleadings is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493,

502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

### III.

The Court first addresses Defendant Herres's motion for judgment on the pleadings in which he argues that Plaintiff fails to sufficiently allege conspiracy, joint action, or malicious prosecution. Doc. 109. "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859-60 (6th Cir. 2012) (citing *Waters v. City of Morristown, Tenn.*, 242 F.3d 353 (6th Cir. 2001)). Thus, to state a claim under § 1983, a Plaintiff must allege "(1) deprivation of a right secured by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Initially, the undersigned finds, as found previously, that Plaintiff sufficiently states a malicious prosecution claim and that the amended complaint cures the technical deficiencies noted by the Sixth Circuit. *DiPasquale*, 748 F. App'x at 695 ("DiPasquale's complaint, though technically deficient, does contain some factual allegations that might support a malicious

prosecution claim"). From the undersigned's perspective, the significant pleading hurdle facing Plaintiff's § 1983 claims against Herres is the fact that Herres is a private citizen and, thus, is generally not a "state actor" for purposes of § 1983. Plaintiff seeks to overcome this hurdle by asserting that Herres acted jointly or conspired with Defendant Hawkins -- indisputably a state actor in his individual capacity as a Clay Township police detective -- to initiate a malicious prosecution against him. Doc. 85.

"Private persons may . . . become state actors for purposes of § 1983 . . . if there is cooperation or concerted activity between the state and private actors[,]" *Dallas v. Holmes*, 137 F. App'x 746, 751 (6th Cir. 2005), such as when "a private party has conspired with state officials to violate constitutional right[.]" *Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 563 (6th Cir. 2010) (citing *Cooper v. Parish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000)). A civil conspiracy claim consists of "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). One asserting a conspiracy must allege "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id*. at 944. "[C]onspiracy claims must be pled with some degree of specificity and [ ] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

With regard to joint action, courts uniformly hold that merely "[p]roviding information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'" *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) (citing *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)). Such is true even if the private citizen provides false information to police.

*See Holdeman v. Consol. Rail Corp.*, 649 F. Supp. 1188, 1196 (N.D. Ind. 1986), *aff'd*, 840 F.2d 20 (7th Cir. 1988); *Young v. Suffolk Cnty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013). "Rather, joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016). "While lying to police officers to persuade them to make an arrest may be the basis of other claims, such as common-law malicious prosecution, it is not 'joint action' with the police." *Ramsey v. Sw. Corr. Med. Grp., Inc.*, No. 18-CV-1845-WJM-KLM, 2019 WL 3252181, at *24 (D. Colo. July 19, 2019).

Plaintiff's key allegations in support of the joint action and/or conspiracy claim here are that "Hawkins, at Herres and Proctor's request, agreed to help the disaffected partners gain an advantage in their business dispute by launching a criminal prosecution against DiPasquale" and, in doing so, Hawkins "deliberately omitted mention of DiPasquale's economic and possessory interests in the Torino when speaking with prosecutors." Doc. 85 at PageID 653. These allegations border on the conclusory and, even if factual, arguably do not demonstrate beyond a speculative level that Herres exerted any influence over Hawkins's decision to pursue criminal charges or that Hawkins and Herres conspired to deprive Plaintiff of his constitutional rights.

Indeed, the facts pled indicate that Officer DeVore conducted the initial investigation and, upon transferring to road patrol, turned the investigation over to Hawkins. Doc. 85 at PageID 650. Upon review of DeVore's file, which included documents obtained by DeVore from Plaintiff's attorney, Hawkins allegedly "dismissed the . . . undisputed documentary evidence" showing Plaintiff's interest in the Torino "and agreed to help Herres and Proctor gain an advantage in their business dispute." *Id.* at PageID 651. However, Plaintiff pleads no facts that Hawkins had ever met, communicated in any way, or somehow otherwise arrived at a meeting of the minds with

11

Proctor and Herres at any time up to that point. *Id*. Instead, it appears, Hawkins's first and only contact with either Herres and Proctor occurred when "Hawkins contacted Proctor and asked him to provide a statement" and no factual allegations exist about any contact, communication, or other basis for the meeting of the minds between Hawkins or Herres -- Herres had already given his statement to DeVore before Hawkins ever took over the case. *Id*. at PageID 649-51.

Despite the foregoing, since the parties have engaged in discovery throughout the pendency of this case, and since discovery is now complete, the undersigned finds that the merits of Plaintiff's claims should be addressed not on the pleadings, but on the evidence at summary judgment. Accordingly, the undersigned concludes that Defendant Herres's motion for judgment on the pleadings should be denied.

**IV.**

The Court next addresses Plaintiff's motion regarding Herres's counterclaim alleging fraud. "The elements of common law fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 314 (S.D. Ohio 2007) (citing *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1083-84 (Ohio 1991)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiff argues that Herres's fraud counterclaim must be dismissed because, *inter alia*, Herres fails to identify the false representation at issue. Doc. 99 at PageID 838. As noted above,

Herres alleges that Plaintiff offered to store Herres's personal property at the Kimmel Road storage facility and "falsely represented to Herres that Herres would continue to have control of and access" to his property while in storage. Doc. 92 at PageID 816, 818. Herres further alleges that Plaintiff made such false representations as part of a fraudulent scheme to gain possession of Herres's property and to, thereafter, subsequently deprive Herres of possession of his property. *Id*. To further induce Herres, Plaintiff purportedly gave Herres a key to the storage facility and then, in furtherance of the purported fraud, subsequently changed the locks. *Id*.

Based on the foregoing, the undersigned fines that Herres sufficiently pleads a fraud claim under Ohio law by alleging that Plaintiff made a materially false representation -- *i.e.*, that Herres would have access to his property while in storage, upon which Herres reasonably relied and, ultimately, caused him the loss of possession of his personal property. Accordingly, Plaintiff's motion for partial judgment on the pleadings should be **DENIED**.

**V.**

Based on the foregoing, the undersigned **RECOMMENDS** that: (1) Plaintiff's motion for judgment on the pleadings (doc. 99) be **DENIED**; and (2) Defendant Herres's motion for judgment on the pleadings (doc. 103) also be **DENIED**.


Date:  September 12, 2019          s/ Michael J. Newman
                                   Michael J. Newman
                                   United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).