UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Charles DiPasquale,**

        *Plaintiff,*

v.

        Case No. 3:16-cv-219
        Judge Thomas M. Rose

**Detective James Hawkins, et al,**

        *Defendants.*

---

**DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT JAMES HAWKINS, (ECF 155), GRANTING IN PART MOTION FOR SUMMARY JUDGMENT BY DEFENDANT MARK HERRES, (ECF 154), AND TERMINATING CASE. SUMMARY JUDGMENT IS ENTERED AGAINST PLAINTIFF ON ALL FEDERAL CLAIMS. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER DEFENDANT/COUNTERCLAIMANT MARK HERRES'S STATE LAW CLAIMS FOR REPLEVIN, CONVERSION AND FRAUD, AND DISMISSES THESE CLAIMS WITHOUT PREJUDICE**

---

Pending before the Court are Motion for Summary Judgment by Defendant James Hawkins, (ECF 155), and Motion for Summary Judgment by Defendant Mark Herres, (ECF 154). The case stems from a dispute over the ownership of a 1968 Ford Torino GT Pace Car. Defendants seek summary judgment on all claims against them. Herres additionally seeks summary judgment on his counterclaims.

I.      **Background**

This case arises out of a theft complaint made by co-defendant, Mark Herres against Plaintiff Charles DiPasquale. On September 19, 2014, Herres went to the Clay Township Police Department, and reported to Detective Douglas DeVore the theft of a 1968 Ford Torino GT Pace

Car from a storage building at 8756 Kimmel Road. (ECF 152-2, PageID 2008.)  At that time, Herres produced a title for the vehicle that showed him as the purchaser, but the title had not yet been transferred into his name. (Id.)  Herres was told by Detective DeVore that because he did not have a title with Herres' name on it, the Clay Township Police Department would not take a theft report on the vehicle. (ECF 146 PageID 1576.)  Subsequently, Herres provided a copy of the title to the Clay Township Police Department. (Id; Hawkins Affidavit Exhibit 1.)

After receiving additional information from Herres, on October 2, 2014, DeVore prepared an Incident Report.  In the report, based upon the complaint from Herres, DeVore identified the incident having occurred sometime between August 2, 2014 and September 19, 2019. (ECF 152, PageID 1802.)  Herres provided a written statement regarding his complaint. (ECF 146, PageID 1638-39.)  Thereafter, DeVore made attempts to contact Plaintiff. (ECF 146, PageID#1643; Hawkins Affid. Exh. 1.)  On October 7, 2014, DeVore contacted Plaintiff's counsel, Attorney Larry Greger, who provided DeVore with additional information regarding Plaintiff, Herres and Bradley Proctor. (Id.)  DiPasquale alleges that he, Procter and Herres formed a partnership to buy and resell cars for profit.  Thereafter, on October 8, 2014, DeVore checked the VIN number of the vehicle, which verified the owner as Herres. (Hawkins Affid. Exh. 1)

Although DeVore described Plaintiff as a "business partner" of Herres, DeVore testified at the criminal trial that Herres did not state DiPasquale was a business partner, that was an assumption made by DeVore. (ECF 85-1, PageID#710-711.)

Although DeVore did not yet send the case to the Montgomery County Prosecutor's Office, he did not close the case.  Sometime between October 9, 2014 and October 15, 2014, Officer DeVore transferred to road patrol with Clay Township Police Department, and the case involving the Torino was turned over to Clay Township Police Department's new detective, Defendant

Hawkins. (Hawkins Affid. ¶3.)

After taking over the case file, on October 15, 2014, Hawkins presented a Felony Approval Sheet and the case file to the Montgomery County Prosecutor's office for review and determination as to charges and prosecution. (Hawkins Affid. ¶ 6.) Hawkins provided the Prosecutor's Office all documents that had been obtained during the course of the investigation. (Id.)

After receiving the file, Assistant Prosecuting Attorney Michele Henne requested further information from Hawkins. (Hawkins Affid. ¶7.) Henne asked Hawkins to ask Proctor some questions. (Hawkins Affid. ¶7, Exh. 3.) On October 23, 2014, Proctor came to the Police Department and gave a statement to Hawkins regarding the relationship between Plaintiff and Herres, as well as the Ford Torino at issue. (Hawkins Affid. Exh. 1.) Hawkins sent Proctor's statement to the Montgomery County Prosecutor's office. (Hawkins Affid. ¶ 9.)

Thereafter, Assistant Prosecutor Joseph R. Habbyshaw refused charges as there were still questions about the titling aspect of the vehicle but noted that the matter be "three paneled" by the Prosecutor's Office. (Hawkins Affid. ¶9, Exh. 3.) Subsequently, Investigator Thomas Brill of the Ohio Bureau of Motor Vehicles contacted Hawkins. (Brill Affid., Exh. 1, p. 2.)

On November 25, 2014, Hawkins met with Investigator Brill, who was investigating Marco Motor Cars, LLC and Plaintiff. (Hawkins Affid. ¶10.) Hawkins provided Brill with information regarding the investigation of the Gran Torino and Brill indicated that the BMV could provide certified documents showing the Gran Torino's ownership based on the State of Ohio's database. (Id.; Brill Affid. Exh. 1.) The following day, Brill delivered certified documents from the BMV to Hawkins relating to the ownership of the Gran Torino. (Hawkins Affid. ¶11; Brill Affid. Exh. 1.) That additional information was then provided to the Prosecutor's office. (Id.)

On January 20, 2015, Hawkins received a document entitled "Facts Supporting Decision

and/or Further Information Requested," from the Prosecutor's office indicating that the Prosecutor's office had decided to pursue charges against Plaintiff. (Hawkins Affid. ¶12.)

In April of 2015, following the presentation of evidence to the grand jury, including the testimony of Thomas Brill (Brill Affid. ¶6), Plaintiff was indicted on one count of theft of a motor vehicle and one count of receiving stolen property. (Id.).  The case was tried to the court, and Plaintiff was found not guilty of both charges on August 6, 2015. (ECF 146, PageID 1588.)

On June 7, 2016, DiPasquale filed a complaint naming as defendants Mark Herres, Brad Proctor and Detective James Hawkins. ECF 1.  All three filed motions for judgment on the pleadings.  A magistrate judge recommended that Herres's Motion for Partial Judgment on the Pleadings (ECF 18) be granted, that Defendant Brad Procter's Motion for Judgment on the Pleadings (ECF 25) be granted, and that he be terminated as a party; and that Hawkins's Motion for Judgment on the Pleadings (ECF 22) be granted with regard to DiPasquale's claim of civil conspiracy, but denied with regard to DiPasquale's claim of malicious prosecution. (ECF 42.) The Court adopted the Report and Recommendation. (ECF 54.)

Hawkins appealed. (ECF 64.)  DiPasquale cross-appealed.  The United States Court of Appeals for the Sixth Circuit affirmed the dismissal of the claim regarding grand jury testimony but reversed the determination that the remaining malicious prosecution claim was sufficiently pleaded and remanded to this Court for consideration of DiPasquale's request for leave to amend his complaint. (ECF 69.)

Leave to amend was granted. (ECF 84.)  The Amended Complaint currently before the Court asserts a claim of Malicious Prosecution against Hawkins and a claim that Hawkins and Herres engaged in a civil conspiracy against him. (ECF 146.)  Herres filed a counterclaim under Ohio law against DiPasquale for replevin, conversion and fraud. (ECF 148.)

Now, Hawkins and Herres have filed motions for summary judgment. (ECF 154, 155.)

**II.     Standard of Review**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.,* at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S., at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).   Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson,* 477 U.S., at 255.   If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure,* § 2726.   Rather, credibility determinations must be left to the fact-finder. *Id.*

The instant case involves questions of state law.   In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.,* 141 F.3d 612, 617 (6th Cir. 1998).   Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore,* 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.,* 145 F.3d 804, 808 (6th Cir. 1998).   Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.,* 27 F.3d 188, 191 (6th Cir. 1994).

Finally, in ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the

court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

## III. Analysis

### A. Claim of Malicious Prosecution

Plaintiff asserts Hawkins and Herres violated his Fourth Amendment right against malicious prosecution by means of wrongful investigation and prosecution.

The Sixth Circuit

> recognizes "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment" based on a defendant officer's "wrongful investigation, prosecution, conviction, and incarceration" of a plaintiff. *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006). To succeed on such a claim, a plaintiff must establish that (1) a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the prosecution decision"; (2) "there was no probable cause to support the charges"; (3) as a result of the legal proceedings, the plaintiff suffered a deprivation of liberty "apart from the initial seizure";[1] and (4) the criminal proceedings ended in the plaintiff's favor. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).[2]

*DiPasquale v. Hawkins*, 748 F. App'x 688, 693 (6th Cir. 2018).

Hawkins asserts Defendant lacks evidence in the record to establish three of the four

---

[1] "Traditionally, [malicious prosecution] claims entail defendants who are detained prior to trial." *Fisher v. Dodson*, 451 F. App'x 500, 502 (6th Cir.2011). See also *Kinlin v. Kline*, No. 1:12 CV 581, 2012 WL 3780461, at *6 (N.D. Ohio Aug.31, 2012) ("A malicious prosecution claim under § 1983 is actually a Fourth Amendment claim to be free from pretrial detention without probable cause.") (internal quotation omitted). *Billock v. Kuivila*, No. 4:11-CV-02394, 2013 WL 591988, at *5 (N.D. Ohio Feb. 14, 2013).

[2] But see, *Jones v. Clark Cty., Kentucky*, No. 19-5143, 2020 WL 2520267, at *21 (6th Cir. May 18, 2020)(Murphy, J., concurring) ("After *Manuel* [*v. City of Joliet, Ill*., 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017)], 'Fourth Amendment malicious prosecution' is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (Easterbrook, J.). And while "[t]here is no such thing as a constitutional right not to be prosecuted without probable cause," "there is a constitutional right not to be held in custody without probable cause." Id. (citation omitted); see also *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019); cf. *Pagán-González v. Moreno*, 919 F.3d 582, 608–09 (1st Cir. 2019) (Barron, J., concurring). Yet I would leave *Manuel*'s possible effect for another day.")

elements of a claim for malicious prosecution. Hawkins asserts there is no evidence that he made, influenced, or participated in the decision by the Montgomery County Prosecutors to charge Plaintiff; there is no evidence that Hawkins lacked probable cause for the criminal prosecution; and there is no evidence Plaintiff suffered a deprivation of his liberty necessary for a malicious prosecution claim.

The Court turns first to the second element, probable cause. Plaintiff would have the Court analyze multiple inaccuracies in documents submitted to the grand jury, and conclude that, without them, probable cause was lacking. Before the Court will do this, however, Plaintiff must overcome the presumption that the grand jury return of a true bill creates.

Normally, "an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes*, 449 F.3d at 716; *see King*, 852 F.3d at 587. However, *King*, recognized an exception to this general principle, reasoning that

> where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*DiPasquale v. Hawkins*, 748 F. App'x 688, 693 (6th Cir. 2018)(citing *King*, 852 F.3d at 587–88; comparing *Manuel v. City of Joliet, Ill.*, –– U.S. ––, 137 S.Ct. 911, 920 n.8 (2017) (rejecting the notion that a grand jury indictment "expunge[s]" a Fourth amendment claim for unlawful pretrial detention when "the proceeding is tainted ... by fabricated evidence")). This exception

similarly applies when an officer has "misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence." *Id.* (quoting *Jones v. Clark County*, 690 F. App'x 334, 336 (6th Cir. 2017); *see also Sanders v. Jones*, 728 Fed. App'x 563, 565–66 (6th Cir. 2018)).

DiPasquale must have evidence "that Hawkins knew or should have known that the statements of Proctor and Herres were false [before a court can consider whether] knowingly or recklessly relying on false statements is sufficiently akin to 'knowingly or recklessly mak[ing] false statements' to overcome the probable-cause presumption…" *DiPasquale*, 748 F. App'x at 693 (quoting *King*, 852 F.3d at 587–88).[3]

Plaintiff will survive Hawkins' motion if he can point to evidence that could lead a reasonable juror to conclude that Hawkins knew or should have known that the statements of Proctor and Herres were false, that Hawkins presented them to the grand jury and that they influenced the decision to prosecute. See *DiPasquale v. Hawkins*, 748 F. App'x 688, 695 (6th Cir. 2018).

Plaintiff would have the Court conclude that Hawkins knew or should have known that the men's accounts were false, inter alia, because DiPasquale provided DeVore with the partnership agreement, lease for the storage facility, checks "and other evidence demonstrating the civil nature of this matter," and that Hawkins had these in his possession when he "presented the case to a Montgomery County Grand Jury"; *Id.* at 4–5; because the partnership agreement, attached to the

---

3 "[I]t is unclear whether relying on an arguably false witness statement would even rise to the level of making a false statement for the purpose of the presumption created by *King*. See *DiPasquale v. Hawkins*, 748 F. App'x 688, 694 (6th Cir. 2018) (questioning but not deciding whether "knowingly or recklessly relying on false statements is sufficiently akin to 'knowingly or recklessly mak[ing] false statements' to overcome the probable-cause presumption")." *Lester v. Roberts*, No. 3:16-CV-119-CHB, 2019 WL 1421755, at *3 (W.D. Ky. Mar. 29, 2019)

complaint, outlined the men's business venture and specified that Herres was expected to acquire cars "on behalf of Marco Motor Cars LLC and only Marco Motor Cars LLC"; *Id.* 12; because Proctor's written statement to the Clay Township police after Hawkins had taken over the investigation acknowledges there was a business relationship among Proctor, Herres, and DiPasquale to buy and fix up cars and that the Torino was purchased with funds withdrawn from the Marco Motor Cars business account.

However, Plaintiff points to no evidence that Hawkins made misrepresentations or presented materially false statements that he knew to be false. "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause" for a prosecution. *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). Because Plaintiff was indicted by a Montgomery County grand jury, the general rule would bar his claims absent application of a known exception to such rule. *Boyce v. City Hall for Springfield, Ohio*, No. 3:19- CV-181, 2019 WL 4305794, at *3 (S.D. Ohio Sept. 11, 2019). Plaintiff cannot point to evidence in the record that would rebut the presumption of probable cause.

While the Incident Report was initially drafted and prepared by Officer DeVore, (ECF 152, PageID#1801.), Hawkins took additional Investigator Notes concerning the meeting with Brad Proctor when he took over the investigation. (Hawkins Affid. ¶5.) Plaintiff takes issue with some details in those notes—such as a statement that the car was purchased for $8,000 rather than $7,000 plus the applicable tax, but whether the car was worth $7,000 or $8,000 is not material to the issue of whether the offense was a felony or any other element of theft. There is no evidence that was anything more than a typographical error or negligence. Plaintiff cannot prove that it was knowing or reckless material misinformation.

Similarly, when the title was formally transferred into Herres's name is not material to the issue of who had possession or control of the vehicle when it was taken.   Where a plaintiff does not show any instances that the defendant provided knowingly or recklessly made false statements or falsified or fabricated evidence, the presumption remains conclusive and not rebutted. *Lester v. Roberts*, No. 3:16-CV-119-CHB, 2019 WL 1421755, at *2 (W.D. Ky. Mar. 29, 2019).

In *Lester*, Plaintiff argued that the evidence and testimony on which a detective relied to secure an indictment were so riddled with inconsistencies, he was reckless in relying on them. The court ruled that even where an "inconsistency…should have led [a detective] to be more skeptical of [a witness's] testimony, a questionable element in part of a witness' testimony does not amount to the type of fabrications outlined in *King* particularly when there is no evidence that [the detective] actively concealed this fact." *Lester* at *3 (W.D. Ky. Mar. 29, 2019).

While Plaintiff has shown some reasons that Hawkins might have questioned the witness' reliability, he has not shown any statements that Hawkins relied on despite knowing that they were false. Compare *Lester* at *3; *Sanders v. Jones*, 728 F. App'x 563, 566 (6th Cir. 2018) (where Defendant acknowledged that on closer inspection of the surveillance footage the Plaintiff was not the one who had participated in the charged drug deal).   Further, none of the discrepancies are so egregious as to undoubtedly call the factual basis for the testimony into question for any reasonable police officer. *Lester* at *3 (citing *Jones v. Clark County, KY*, 690 F. App'x 334, 336 (6th Cir. 2017).   Finally, it is unclear whether relying on an arguably false witness statement would even rise to the level of making a false statement for the purpose of the presumption created by *King*. See *DiPasquale v. Hawkins*, 748 F. App'x 688, 694 (6th Cir. 2018) (questioning but not deciding whether "knowingly or recklessly relying on false statements is sufficiently akin to 'knowingly or recklessly mak[ing] false statements' to overcome the probable cause presumption").

The evidence Plaintiff can present does not allow a reasonable finder of fact to conclude Hawkins was legally reckless. Plaintiff's argument that a genuine issue of material fact exists as to whether this matter was civil is entirely off the mark. (ECF 161, PageID #2253-54, 2560, 2569, 2573-74.) According to Plaintiff, "Law enforcement has no jurisdiction to act in a civil matter (ECF 152, PageID 1747) ("A business dispute between partners is an example of a civil matter" based upon his training and experience). Thus, to have acted at all in the 'entirely civil matter,' was at least reckless on the part of Detective Hawkins, an admitted state actor. (ECF 147 PageID 1699)." (ECF 161, PageID 2553, Response at 2.)

"Some claims are so obvious or obscure that they have not been made before. Other claims are made up or false, making them more difficult to support using references to the existing literature." Orin S. Kerr, *A Theory of Law*, 16 GREEN BAG 2D 111. The notion that police officers may not investigate civil matters is not obvious to the Court. That an individual may have endured workplace sexual harassment does not foreclose sexual assault. Criminal charges of theft do not bar a civil claim of conversion. Criminal fraud charges do not rule out a breach of contract claim. This pillar of Plaintiff's case is neither obvious, and, if obscure, certainly within his counsel's ability to elucidate over the course of his 48-page response.

The focus of this case does not consist of a criminal or civil distinction, nor of whether a "jury could find that DiPasquale was an owner of the vehicle and had joint possession and control, by the lease agreement for the storage facility and thus not a 'thief,'" (ECF 161, Response at 39,) but rather the existence of probable cause. In order to prove malicious prosecution under federal law, a plaintiff must show that there is no probable cause to justify an arrest or a prosecution. *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003).

Plaintiff fails to show any materially false statements made by Hawkins or evidence fabricated by Hawkins and therefore cannot rebut the presumption of probable cause created by the grand jury indictment. *Barnes*, 449 F.3d at 715-16.

Clearer still is the resolution of the third element, deprivation of liberty. A malicious prosecution plaintiff must show that, "'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Billock v. Kuivila*, No. 4:11-cv-02394, 2013 WL 591988, *5 (N.D. Ohio 2013) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)). Malicious prosecution claims usually involve defendants who have been detained prior to trial. Id. "Service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation." Id. at *6, citing *Briner v. City of Ontario*, No. 1:07-CV-129, 2011 WL 866464, *4 (N.D. Ohio 2011).

Plaintiff points to *Miller* as precedent establishing that he has suffered a deprivation of liberty beyond the initial seizure, but *Miller* offers him no support:

> The record reflects that after Miller participated in the video conference with the night court commissioner who found probable cause, she remained detained for approximately forty-five minutes. Thereafter, she paid a $355 fee to be released and was required to participate in a pretrial release program, which mandated that she show up on time for all court appearances and call the pretrial case manager every week until the case was resolved. Participation in this program was an alternative to Miller posting a $3,000 bond. Miller's participation in the pretrial release program constitutes a deprivation of liberty separate from the initial seizure. In *Noonan v. County of Oakland*, we concluded that the plaintiff was not deprived of his liberty apart from his initial seizure because the plaintiff was "never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions." No. 15-2192, 683 Fed. App'x 455, 462–63, 2017 WL 1102912, at *7–8 (6th Cir. Mar. 24, 2017) (unpublished). In that case, we concluded that the aggravation and costs associated with hiring an attorney and

>   reputational harms were not "a deprivation of liberty as understood in our Fourth Amendment jurisprudence." *Id*. at 463, 2017 WL 1102912 at *8.  However, in *Johnson v. Moseley*, we "assume[d] that" conditions of pretrial release "represent a sufficient deprivation of ... liberty to satisfy the third element" of *Sykes*. 790 F.3d 649, 654 (6th Cir. 2015).  Also, in *Johnson v. City of Cincinnati*, we indicated that imposing restrictions designed to compel court appearance, "such as obligations to post bond, attend court hearings, and contact pretrial services" could constitute a seizure. 310 F.3d 484, 493 (6th Cir. 2002) (collecting cases).

*Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017)

Here, Plaintiff was not arrested, nor was he incarcerated while awaiting trial.  The mere fact that Plaintiff went on trial for the indicted charges does not constitute a deprivation of liberty. An initial arrest and related detention are legally insufficient to satisfy the deprivation of liberty element of a malicious prosecution claim. *Howell v. Ohio State Highway Patrol Subdivision*, No. 1:18-CV-510, 2019 WL 6465508, at *7 (S.D. Ohio Dec. 2, 2019) (citing *Billock v. Kuivila*, 2013 WL 591988, at *6, 2013 U.S. Dist. LEXIS 20388 at **17-18 (N.D. Ohio Feb. 14, 2013) (collecting cases); and *Kinlin v. Kline*, 2012 WL 3780461, at *6 (N.D. Ohio Aug. 30, 2012)).

Plaintiff alleges that he was deprived of his liberty because he "was released on bond, the conditions of which included travel restrictions, fingerprinting, mug shots and pretrial supervision. DiPasquale asserts he was also required to report his whereabouts to court personnel, and submit to urine analysis, fingerprinting and photographing by representatives of the Montgomery County, Ohio Sheriff's Office" (ECF 146, PageID 1587), he points to no evidence to substantiate this claim. Plaintiff was released on his own recognizance and the only apparent condition of bail imposed was attendance at the pretrial conference. (ECF 155-3, PageID 2462-63 Hawkins Motion, Exh. C at 10-12.)  He was granted permission to travel by the Montgomery County Court of Common Pleas. (ECF 155-3, 2462.)  Plaintiff points to no evidence that he was deprived of his liberty.

Because there is no genuine issue of material fact that Plaintiff cannot establish the elements of his claim for malicious prosecution against Defendant Hawkins, Defendant Hawkins is entitled to summary judgment on this claim.

**B.    Civil Conspiracy**

Hawkins and Herres both move for summary judgment on claim that they engaged in a civil conspiracy to deprive him of his constitutional rights. To make a claim for conspiracy to deprive someone of their due process rights, a plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) citing *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).

Plaintiff's civil conspiracy claim founders on the first element: the existence of an agreed plan. Plaintiff directs the Court's attention to pages of the record upon which the Court finds no evidence of the existence of any agreement. (ECF 161, PageID 2591("Hawkins agreed to seek the filing of theft charges (ECF 152 PageID 1774; 1776); (ECF155-1 PageID# 2429-2434) when he did not have probable cause.")

To the contrary, Hawkins testified that he did not know Mark Herres outside of this incident. (Hawkins Dep. p. 33.) Hawkins never spoke with Herres about contacting Plaintiff for the return of the vehicle or settling the matter on good terms. (Hawkins Dep. p. 39-43; 104.) Herres testified that Hawkins did not inform him he was providing information to the Prosecutor or the status of the case. (Herres Dep. p. 91.) Mere "[c]ommunications between a private and state actor, without more facts supporting a concerted effort or plan between the parties, are

insufficient to make a private party a state actor."). *Libertarian Party of Ohio v. Husted*, 188 F. Supp. 3d 665, 672 (S.D. Ohio 2016) (citing *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (E.D.N.Y. 2010).

Neither does Plaintiff point to any conspiratorial objective to deprive him of his constitutional rights. Plaintiff's allegations are based solely on speculation and conjecture. Speculation and conjecture are insufficient to establish the existence of an agreement. *Regets v. City of Plymouth*, 568 F. App'x 380, 391 (6th Cir. 2014) (citing *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir.1989)). Plaintiff simply has not established an agreement to engage in unlawful action.

He cannot simply rely on Hawkin's actions to establish conspiratorial conduct, as Hawkin's actions are just as consistent with independent conduct as they are with a conspiracy. See *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (citing *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999) ("Certainly, much of the plaintiffs' evidence is as consistent with independent conduct as with a conspiracy.") The "web of inference[s] is too weak" on the alleged facts to permit a finding, "absent sheer speculation," that Hawkins shared an unlawful objective with Herres. See *Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) (citing *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir.2010) (internal quotation marks omitted)). Therefore, Defendant Hawkins is entitled to summary judgment as a matter of law.

C. **Qualified Immunity**

Because Hawkins has prevailed on the merits, the question of whether he enjoys qualified immunity is moot.

IV. **Conclusion**

Because Plaintiff Charles DiPasquale has no evidence that he was detained beyond an

initial arrest and because Plaintiff cannot overcome the presumption of probable cause created by the grand jury's return of an indictment, Defendant James Hawkins is entitled to summary judgment on Plaintiff's malicious prosecution claim.  Because Plaintiff has no evidence of an agreement between Defendants James Hawkins and Mark Herres, Defendants are entitled to summary judgment on Plaintiff's civil conspiracy claim.  Wherefore, Motion for Summary Judgment by Defendant James Hawkins, (ECF 155), is **GRANTED**.  Motion for Summary Judgment by Defendant Mark Herres, (ECF 154), is **GRANTED IN PART**.  Defendant Mark Herres is awarded summary judgment on Plaintiff's claims against him.  As regards Herres's counterclaims against DiPasquale for replevin, conversion and fraud, these are claims under Ohio law.

Although the surviving state law claims were properly asserted in this Court by means of the supplemental jurisdiction provision of 28 U.S.C. § 1367, a court may decline such supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  The Court declines to exercise its supplemental jurisdiction over this matter and **DISMISSES** the Herres's counterclaims for replevin, conversion and fraud without prejudice.  The captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** this Wednesday, June 3, 2020.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE